1  TRITIA M. MURATA (CA SBN 234344)
   TMurata@mofo.com
2  LAUREN R. LEIBOVITCH (CA SBN 323230)
   LLeibovitch@mofo.com
3  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard, Suite 6000
4  Los Angeles, California  90017-3543
   Telephone:  (213) 892-5200
5  Facsimile:   (213) 892-5454
6
7  Attorneys for Defendants
   SWIFT BEEF COMPANY and JBS USA FOOD
8  COMPANY HOLDINGS

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11 | JUAN GARZA, on behalf of himself and | Case No. 2:22-cv-06223 |

12 all others similarly situated,

13              Plaintiff,             **NOTICE OF REMOVAL OF
                                       STATE COURT CIVIL ACTION**
14    vs.                              **UNDER 28 U.S.C. §§ 1332, 1441,
                                       1446 and 1453 [DIVERSITY AND**
15                                     **CAFA JURISDICTION]**
16 SWIFT BEEF COMPANY, a Delaware
17 corporation; JBS USA FOOD COMPANY    Removed from the Superior Court of
   HOLDINGS, a Colorado Corporation; and the State of California, County of Los
18 DOES 1 through 50, inclusive,        Angeles

19              Defendants.             State Court Case No. 22STCV24520
20

21 **TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF, AND**

22 **HIS COUNSEL OF RECORD:**

23        **PLEASE TAKE NOTICE THAT**, pursuant to 28 U.S.C. §§ 1332,

24 1446, and 1453, Defendants Swift Beef Company and JBS USA Food Company

25 Holdings ("Defendants") hereby remove the above-captioned state court action

26 currently pending in the Superior Court of the State of California for the County of

27 Los Angeles to the United States District Court for the Central District of California.

28 Removal of this action is proper for the reasons listed below:

SF-4919341

1.     This action is within the original jurisdiction of this Court and properly removed under 28 U.S.C. §§ 1332, 1441, 1446, and 1453. Specifically, removal is proper under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d) and 28 U.S.C. § 1453, which grants district courts original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and any member of the putative class of plaintiffs is a citizen of a State different from any defendant. As set forth below, this action satisfies each of the requirements of 28 U.S.C. § 1332(d)(2) for original jurisdiction under CAFA. Further, pursuant to 28 U.S.C. § 1332(a)(1), this Court has original jurisdiction over this matter because it is a civil action between citizens of different States where the matter in controversy exceeds the sum or value of $75,000.

2.     On or about July 29, 2022, Plaintiff Juan Garza ("Plaintiff") filed a putative Class Action Complaint ("Complaint" or "Compl.") purportedly on behalf of himself and all others similarly situated against Defendants in the Superior Court of the State of California, County of Los Angeles, captioned *Juan Garza v. Swift Beef Company, et al.*, Case No. 22STCV24520 (the "State Court Action"). On August 1, 2020, Plaintiff served Defendants with the Complaint. True and correct copies of all process, pleadings, and orders that have been served on Defendants in this action are attached hereto collectively as **Exhibit A**.

3.     Plaintiff alleges he was employed by Defendants. (Compl. p. 5, ¶ 17.) Plaintiff asserts seven causes of action against Defendants on behalf of himself and all others allegedly similarly situated: (1) failure to provide meal periods (Cal. Lab. Code §§ 204, 223, 226.7, 512, and 1198); (2) failure to provide rest periods (Cal. Lab. Code §§ 204, 223, 226.7, and 1198); (3) failure to pay hourly wages (Cal. Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1, and 1198); (4) failure to indemnify business expenses (Cal. Lab. Code § 2802); (5) failure to provide accurate written wage statements (Cal. Lab. Code § 226(a)); (6) failure to timely pay all final wages (Cal. Lab. Code §§ 201, 202, and 203); and (7) unfair competition (Cal. Bus. & Prof. Code

§§ 17200 *et seq.*). (*See generally* Compl.) Plaintiff – on behalf of himself and all others allegedly similarly situated – seeks unpaid wages, actual damages, liquidated damages, restitution, declaratory relief, prejudgment interest, statutory penalties, civil penalties, and attorneys' fees and costs. (*Id*. at p. 19.)

4.    Swift Beef Company and JBS USA Food Company Holdings are the only defendants that have been properly joined and served. No other defendant must join in this removal.  *See* 28 U.S.C. §§ 1446(b)(2)(A), 1453(b).

5.    This Notice is effected properly and timely pursuant to 28 U.S.C. § 1446(b) because it has been filed within 30 days after Defendants were properly served with a copy of the Summons and Complaint.

6.    Defendants will promptly serve a copy of this Notice on counsel for Plaintiff and will file a copy of this Notice with the Clerk of the Superior Court of the State of California, County of Los Angeles, pursuant to 28 U.S.C. § 1446(d).

7.    This action is properly removable to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1446(a) because the Superior Court of the State of California, County of Los Angeles, in which this case was brought, lies within this district.

## THIS COURT HAS JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT (CAFA)

8.    This action is removable to this Court pursuant to 28 U.S.C. § 1332(d), as amended by CAFA, and 28 U.S.C. § 1453.  Pursuant to 28 U.S.C. §§ 1332(d) and 1453, a putative class action commenced after February 18, 2005 may be removed to the appropriate federal court if: (1) any member of the putative class is a citizen of a state different from any defendant (*i.e.*, minimal diversity); (2) there are at least 100 members in the putative class; and (3) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. §§ 1332(d)(2), 5(B), 1453; *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84-85 (2014).

NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

SF-4919341

9.      Unlike with traditional diversity jurisdiction in non-class actions, there is no presumption against jurisdiction in matters removed under CAFA. *Dart*, 574 U.S. at 89 ("It suffices to point out that no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."); *see also* S. Rep. No. 109-14, p. 43 (2005) (CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

10.     Further, notices of removal are subject to the same general pleading standards applicable to complaints under Rule 8(a) of the Federal Rules of Civil Procedure and, accordingly, such notices need not attach evidence or meet a burden of proof; there need only be a "short and plain statement of the grounds for removal." *Dart*, 574 U.S. at 86-87; 28 U.S.C. § 1446(a).

11.     With these standards in mind, all requirements for removal under CAFA are met here, as detailed further below.

### This Is a Putative Class Action

12.     Under CAFA, a class action means "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

13.     California Code of Civil Procedure § 382 authorizes an action to be brought by one or more representative persons as a class action.

14.     Plaintiff has filed this action as a putative class action pursuant to California Code of Civil Procedure § 382. (Compl. p. 2, ¶ 8.)

### Minimal Diversity Exists

15.     "[U]nder CAFA, complete diversity is not required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) (citation omitted). Minimal diversity exists if any putative class member is a citizen of a state

NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

1  different from any defendant. 28 U.S.C. § 1332(d)(2)(A). Here, the requisite minimal
2  diversity exists.

3      16.    Plaintiff alleges in the Complaint that he resides in California. (Compl.
4  p. 2, ▯ 4.) "[W]hile residence and citizenship are not the same, a person's place of
5  residence is *prima facie* evidence of his or her citizenship." *McEntire v. Kmart Corp.*,
6  No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *3 (D.N.M. Feb. 9, 2010). "[P]roof
7  that a person is a resident of a state is *prima facie* evidence that he is a citizen thereof,
8  and supposedly shifts the burden of showing that his domicile and citizenship is other
9  than the place of his residence to him who alleges it." 13E Fed. Prac. & Proc. Juris. §
10 3611 (3d ed.) (quotation marks and citation omitted). Based on Plaintiff's allegation
11 regarding his residency (*see* Compl. p. 2, ▯4), he is a citizen of California.

12     17.    Further, the putative class consists of employees working in California.
13 (Compl. ▯ 9.) It is reasonable to conclude that the putative class includes other
14 California citizens as well.

15     18.    Defendant Swift Beef Company is now, and was at the time the action
16 was commenced, a citizen of a State other than California. A corporation shall be
17 deemed to be a citizen of every State by which it has been incorporated and of the
18 State where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A
19 corporation's principal place of business "refers to the place where the corporation's
20 high level officers direct, control, and coordinate the corporation's activities." *Hertz*
21 *Corp. v. Friend*, 559 U.S. 77, 80 (2010).

22     19.    Defendant Swift Beef Company is now, and was at the time this action
23 was commenced, incorporated in the State of Delaware. (Compl. p. 2, ¶ 5.) The
24 principal place of business for Defendant Swift Beef Company is now, and was at the
25 time this action was commenced, in the State of Colorado. (Declaration of Dylan
26 Moore ("Moore Decl.") ¶ 2, attached as **Exhibit B**.) Specifically, Defendant's
27 headquarters and principal place of business is in Greeley, Colorado. (*Id*.)
28 Accordingly, Swift Beef Company is a citizen of the States of Delaware and Colorado.

5
NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

20.    Because Plaintiff is a citizen of California, Defendant Swift Beef Company is a citizen of Delaware and Colorado, and thus at least one member of the putative class is a citizen of a state different from at least one defendant, this putative class action satisfies CAFA's minimal diversity requirements. *See* 28 U.S.C. § 1332(d)(2)(A).[1]

**There Are More Than 100 Members in the Putative Class**

21.    Plaintiff seeks to represent three putative classes: (1) an "Hourly Employee Class" comprised of "[a]ll persons employed by Defendants, whether directly or through any staffing agencies and/or any other third parties, in hourly or non-exempt positions in California at any time during the Relevant Time Period," which is divided into further subclasses; (2) a "UCL Class," which is coextensive with the Hourly Employee Class; and (3) an "Expense Reimbursement Class" comprised of "[a]ll persons employed by Defendants in California who incurred business expenses at any time during the Relevant Time Period." (Compl. p. 3, ¶ 9.) Plaintiff's Complaint defines the Relevant Time Period to be "the time period beginning four years prior to the filing of this action until judgment is entered, excluding any time period already released by any prior settlement of the relevant claim for which preliminary approval has been granted by a court of competent jurisdiction." (*Id.*)[2]

22.    Given Plaintiff's definitions of the proposed classes, Defendants estimate there are at least 966 putative class members, more than enough required for

---

[1] Given that minimal diversity exists, the citizenship of Defendant JBS USA Food Company Holdings has no impact on the Court's jurisdiction under CAFA. Defendants note, however, that Defendant JBS USA Food Company Holdings is now, and at the time this action commenced, also a citizen of Delaware and Colorado. (Moore Decl. ¶ 3.)

[2] Plaintiff was a class member in two previous class actions against Defendants in this District. *De Cabrera v. Swift Beef Co.*, Case No. 5:18-cv-02551-PSG-E (C.D. Cal.) and *Duron v. JBS USA Food Company Holdings*, Case No. 5:19-cv-00702-PSG-E (C.D. Cal.). A joint settlement in those class actions resolved many of the same claims asserted in this case, and those claims were released up to the date of June 26, 2020. Accordingly, for the purposes of this Notice only, Defendants assume that the "Relevant Time Period" for all claims begins on June 26, 2020.

SF-4919341

1   jurisdiction under CAFA. (*See* Declaration of Araceli Burket ("Burket Decl.") ⁋ 2,

2   attached hereto as **Exhibit C**.) *See also* 28 U.S.C. § 1332(d)(5)(B) (requiring at least

3   100 proposed members for CAFA jurisdiction).

4   **The Amount in Controversy Exceeds $5,000,000, Excluding Interest and Costs**

5   23.   The amount in controversy in a putative class action is determined by

6   aggregating the claims of all members of the putative class, *see* 28 U.S.C. §

7   1332(d)(6). Where, as here, a complaint does not allege an amount in controversy, a

8   notice of removal need only include "a plausible allegation that the amount in

9   controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89. In alleging

10   the amount in controversy, Defendants may rely on reasonable assumptions, follow

11   "a reasonable chain of logic," and make reasonable calculations. *LaCross v. Knight*

12   *Transp. Inc*., 775 F.3d 1200, 1201 (9th Cir. 2015) ("[D]efendants relied on a

13   reasonable chain of logic . . . to establish that the amount in controversy exceeds $5

14   million.").

15   24.   Defendants do not make any admission of liability or damages with

16   respect to any aspect of this case and, in this Notice, take no position as to the proper

17   legal tests applicable to Plaintiff's claims or asserted damages. However, given

18   Plaintiff's claims and allegations, the amount in controversy in this case exceeds the

19   sum of $5,000,000.

20   Plaintiff's Meal Break Claims

21   25.   California law provides that if an employer fails to provide an employee

22   an uninterrupted meal period in which the employee is relieved of all duty, the

23   employee may recover an additional one hour of pay at the employee's regular rate of

24   pay for each workday in which a meal break violation occurs. *See* Cal. Lab. Code §

25   226.7. (*See also* Compl. p. 9, ⁋ 27.)

26   26.   Plaintiff alleges that Defendants "maintained a policy or practice" of not

27   providing Plaintiff and other members of the Meal Period Sub-Class – *i.e.*, those

28   members of the Hourly Employee Class who worked more than one five-hour shift at

1  any point during the Relevant Time Period – with uninterrupted, duty-free meal

2  periods. (Compl. p. 3, ⁋ 9; p. 9, ⁋ 32.)

3       27.   District courts have found that based solely on such "pattern and

4  practice" or "policy and practice" allegations, violation rates of 25% to 60% can be

5  reasonably assumed as a matter of law for purposes of CAFA removal jurisdiction.

6  *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189-90 (E.D. Cal. 2020) (accepting a

7  40% violation rate). *See also Elizarraz v. United Rentals, Inc.*, No. 2:18-CV-09533-

8  ODW (JC), 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) (accepting a 50%

9  violation rate for meal period claim and 30% violation rate for rest period claim where

10  complaint alleged a "pattern and practice" of violations); *Hull v. Mars Petcare US,*

11  *Inc.*, No. ED CV-18-1021 PSG (KKx), 2018 WL 3583051, at *4 (C.D. Cal. July 25,

12  2018) ("Courts in this district routinely find a 60% assumption reasonable where, as

13  here, the alleged violations are based on a standard policy."); *Bryant v. NCR Corp.*,

14  284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (accepting 60% violation rate for meal

15  period claim and 30% violation rate for rest period claim where "policy and practice"

16  alleged); *Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL

17  5952181, at *3 (C.D. Cal. Nov. 30, 2017) (60% violation rate for meal and rest break

18  claims); *Oda v. Gucci Am., Inc.*, Nos. 2:14-cv-7468 and 7469–SVW (JPRx), 2015

19  WL 93335, at *4 (C.D. Cal. Jan. 7, 2015) (accepting defendant's 50% violation rate

20  as reasonable, and noting that a defendant "is not required to comb through its records

21  to identify and calculate the exact frequency of violations"); *Feao v. UFP Riverside,*

22  *LLC*, No. CV 17-3080 PSG (JPRx), 2017 WL 2836207, at *5 (C.D. Cal. June 29,

23  2017) (accepting 60% rate for meal and rest break claims); *Stanley v. Distrib.*

24  *Alternatives, Inc.*, No. EDCV 17-2173 AG (KKx), 2017 WL 6209822, at *2 (C.D.

25  Cal. Dec. 7, 2017) (finding appropriate assumed violation rates of "three missed rest

26  breaks, and three missed meal breaks per week" where complaint offered no guidance

27  as to the frequency of the violations).

28

NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

SF-4919341

28.    Here, given the remaining allegations in the Complaint, and assuming those allegations as true, an assumed violation rate at the top of the range (*i.e.*, 60%, or three out of five meal break violations per week) is plausible and warranted for CAFA removal purposes. Specifically, not only does Plaintiff allege a "policy or practice" of not providing meal breaks, Plaintiff also alleges that meal break violations occurred because Defendants were "*chronically* understaff[ed] *each* work shift"; because Defendant imposed "so much work on *each* employee such that it made it unlikely" the employee could take a meal break; and because there was only one time clock, which caused Plaintiff and the putative class to wait "up to five minutes during *each* meal period before clocking in." (Compl. pp. 6-7, ¶ 10) (emphasis added). Further, Plaintiff alleges that putative class members were "constantly" interrupted during their meal breaks. (*Id*. ¶ 11).  These allegations would, in fact, support a reasonable assumption of a 100% violation rate. For the purposes of this Notice, however, Defendants conservatively estimate a violation rate of 60%, which is plausible if Plaintiff's allegations are taken as true for purposes of estimating the amount in controversy.

29.    Defendants, therefore, estimate that Plaintiff's meal break claim has placed at least $1,720,731 in controversy.

30.    Specifically, Defendants estimate that 707 regular hourly employees were members of the Meal Break Sub-Class and worked a total of 136,511 days, with each of those workdays likely being 5 hours or more. (Burket Decl. ¶ 3.) An assumed 60% violation rate results in approximately 81,906 workdays for which meal period premiums in the amount of one hour of pay at the employee's regular rate would be in controversy.  With an average hourly rate of $19.57 (*see id*.), the total amount in controversy for regular hourly employees in the putative Sub-Class is at least $1,602,900. *See also Garcia v. ACE Cash Express, Inc*., No. SACV 14-0285-DOC (RNBx), 2014 WL 2468344, at *2 (C.D. Cal. May 30, 2014) (defendants "may make mathematical calculations using reasonable averages of, for example, hourly,

monthly, and annual incomes of comparable employees when assessing the amount-in-controversy") (citing *Coleman v. Estes Express Lines, Inc*., 730 F. Supp. 2d 1141, 1148-49 (C.D. Cal. 2010)). The same calculation for temporary employees in the putative Sub-Class and other non-exempt employees in the putative Sub-Class results in at least $23,768[3] and $94,063,[4] respectively, in controversy. The total amount in controversy for all three groups is, therefore, at least $1,720,731.

Plaintiff's Rest Break Claim

31.    As with Plaintiff's meal break claim, California law provides that if an employer fails to provide an employee with a required rest period, the employee may recover an additional one hour of pay at the employee's regular rate of pay for each workday in which a rest break violation occurs. *See* Cal. Lab. Code § 226.7. (*See also* Compl. p. 10, ⁋ 40.)

32.    Plaintiff alleges that Defendants "maintained a policy or practice" of not providing Plaintiff and other members of the Rest Period Sub-Class – *i.e.*, those members of the Hourly Employee Class who worked more than one shift lasting three and one-half hours at any point during the Relevant Time Period – with required rest breaks. (Compl. p. 3, ⁋ 9; p. 11, ⁋ 43.)

33.    As noted above, for purposes of CAFA removal jurisdiction, courts have found that violation rates of 25% to 60% can be reasonably assumed as a matter of law based on "pattern and practice" or "policy and practice" allegations, and courts commonly accept a 30% violation rate for alleged rest break violations. (*See* ⁋ 27, *supra* (citing cases).)

34.    Here, given the remaining allegations in the Complaint, and assuming those allegations are true, an assumed violation rate of 30% (*i.e.*, failure to provide three out of ten rest breaks per week) is plausible and warranted for CAFA removal

---

[3] (2,274 total shifts x 60 percent) x $17.42/hour = $23,767.84. (Burket Decl. ⁋ 4.)
[4] (7,027 total shifts x 60 percent) x $22.31/hour = $94,063.42. (Burket Decl. ⁋ 5.)

10

SF-4919341

purposes. Specifically, not only does Plaintiff allege a "policy or practice" of not providing rest breaks, Plaintiff also alleges that rest break violations occurred because Defendants did not schedule each rest break as part of each work shift; were "*chronically* understaff[ed] *each* work shift"; and because Defendant imposed "so much work on *each* employee such that it made it unlikely" the employee could take a rest break. (Compl. p. 7, ⁋ 13) (emphasis added). Further, Plaintiff alleges that putative class members were "constantly" interrupted during their rest breaks and were "regularly" not provided with rest breaks. (*Id*. p. 7, ⁋⁋ 14-15.) These allegations would, in fact, support an assumed violation rate much higher than 30 percent. For the purposes of this Notice, however, Defendants conservatively estimate a violation rate of 30%, which is plausible if Plaintiff's allegations are taken as true for purposes of estimating the amount in controversy.

35. Defendants, therefore, estimate that Plaintiff's rest break claim has placed at least $1,720,731 in controversy.[5]

### Plaintiff's Claim for Unpaid Hourly and Overtime Wages

36. Plaintiff's third cause of action seeks unpaid straight time and overtime wages for time that putative members of the Hourly Employee Class allegedly worked off the clock. (Compl. pp. 11-13, ⁋⁋ 47-65.)

---

[5] Specifically, Defendants estimate that 707 hourly employees were members of the Rest Break Sub-Class and worked a total of 136,511 days, with each of those days consisting of shifts entitling employees to at least two rest breaks. (Burket Decl. ⁋ 3.) A 30% violation rate (*i.e.*, three out of ten rest break violations per week, with the violations occurring on separate days) results in approximately 81,906 workdays for which one hour of pay at the employee's regular rate would be owed. With an average hourly rate of $19.57 (*see id*.), the total amount in controversy for hourly employees in the putative Sub-Class is at least $1,602,900. The same calculation for temporary employees in the putative Sub-Class and other non-exempt employees in the putative Sub-Class results in at least $23,768 - *i.e.*, (2,274 total shifts x violations on 3 out of 5 shifts per week) x $17.42/hour) – and $94,063 – *i.e.*, (7,027 total shifts x violations on 3 out of 5 shifts per week) x $22.31/hour – in controversy, respectively. (*Id*. ⁋⁋ 4-5.) The total amount in controversy for all three groups is, therefore, at least $1,720,731.

SF-4919341

37.     In support of these claims, Plaintiff alleges that putative class members have been required to spend one to two unpaid minutes at the beginning of each shift at a security check. (Compl. p. 6, ¶¶ 6-7.) Further, Plaintiff alleges that putative class members have been "required to wait in line for up to five minutes before they were able to clock back in from their meal breaks due to Defendants not having enough time clocks available." (*Id*. p. 6, ¶ 8.) Solely for the purpose of determining the amount in controversy, Defendants conservatively estimate that, based on Plaintiff's allegations, putative class members spent an average of 3 minutes each day performing unpaid work.[6]

38.     Under California law, work in excess of eight hours in one workday is considered overtime and must be compensated at the rate of at least one and one-half times the employee's regular rate of pay. Cal. Lab. Code § 510.

39.     Among regular hourly employees in the proposed class, those employees worked an estimated total of 136,511 shifts, with an estimated 51,766 of those shifts being under 8 hours long and the remaining 84,745 shifts being longer than 8 hours. (Burket Decl. ¶ 3.) The unpaid straight-time wages in controversy for hourly employees are, therefore, at least $50,653.[7] The unpaid overtime wages in controversy are at least $124,363.[8]

40.     Among temporary employees in the proposed class, those employees worked an estimated total of 2,274 shifts, with an estimated 639 of those shifts being under 8 hours long and the remaining 1,635 shifts being longer than 8 hours. (Burket

---

[6] Plaintiff also alleges that putative class members "would spend several minutes per week" communicating with management about work-related issues, and that the putative class members were not paid for that time. (Compl. pp. 5-6, ¶¶ 1-2.) This alleged unpaid time is not included in Defendants' estimate of the amount in controversy, but consideration of these additional alleged unpaid wages would serve to increase the amount in controversy.

[7] (Three minutes of alleged unpaid time per shift) x (avg. hourly rate of $19.57) x (51,766 shifts) = $50,653.

[8] (Three minutes of alleged unpaid time per shift) x (avg. hourly overtime rate of $29.35) x (84,745 shifts) = $124,363.

12

NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

Decl. ⁋ 4.) The unpaid straight-time wages in controversy for temporary employees are, therefore, at least $557.[9] The unpaid overtime wages in controversy are at least $2,136.[10]

41.    Among other hourly-paid, non-exempt employees in the proposed class, those employees worked an estimated total of 7,027 shifts, with an estimated 2,307 of those shifts being under 8 hours long and the remaining 4,720 shifts being longer than 8 hours. (Burket Decl. ⁋ 5.) The unpaid straight-time wages in controversy for these employees are, therefore, at least $2,574.[11] The unpaid overtime wages in controversy are at least $7,896.[12]

42.    Accordingly, Plaintiff's Complaint places at least $53,784 in alleged unpaid straight-time wages in controversy and at least $134,395 in alleged unpaid overtime wages in controversy.

### Plaintiff's Claim for Inaccurate Wage Statements

43.    Plaintiff alleges that putative class members in the Wage Statement Penalties Sub-Class were not provided with accurate wage statements. (Compl. p. 3, ⁋ 9; p. 14, ⁋ 69.)

44.    Under Labor Code Under section 226(e), "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) [requiring issuance of accurate wage statements] is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four

---

[9] (Three minutes of alleged unpaid time per shift) x (avg. hourly rate of $17.42) x (639 shifts) = $557.

[10] (Three minutes of alleged unpaid time per shift) x (avg. hourly overtime rate of $26.13) x (1,635 shifts) = $2,136.

[11] (Three minutes of alleged unpaid time per shift) x (avg. hourly rate of $22.31) x (2,307 shifts) = $2,574.

[12] (Three minutes of alleged unpaid time per shift) x (avg. hourly overtime rate of $33.46) x (4,720 shifts) = $7,896.

NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

SF-4919341

1    thousand dollars ($4,000)[.]" The applicable statute of limitations is one year. *See* Cal.

2    Civ. Proc. Code § 340(a).

3        45.    In his Complaint, Plaintiff alleges Defendants "intentionally" provided

4    Plaintiff and putative class members "with written wage statements that Defendants

5    knew do not comply with Labor Code §226(a)." (Compl. p. 14, ⁋ 70.) Plaintiff's

6    Complaint further alleges that each wage statement issued to putative class members

7    was inaccurate. Specifically, as explained above, Plaintiff alleges that putative class

8    members worked unpaid time *each shift*. Further, Plaintiff alleges that inaccurate

9    wage statements were issued "at all relevant times" during the limitations period. (*Id.*

10    p. 14, ⁋ 69.)

11        46.    Regular hourly employees are paid on a weekly basis. (Burket Decl. ⁋

12    3.) Defendants estimate that approximately 550 hourly employees in the putative Sub-

13    Class worked a total of 14,321 weeks. (*Id.*) Thus, for these employees, the penalties

14    for an initial inaccurate wage statement (550 weeks x $50 per week) would be

15    $27,500, and the penalties for each subsequent inaccurate wage statement ((14,321

16    weeks – 550 weeks) x $100 per week) would be $1,377,100. Therefore, the total

17    penalty in controversy for these hourly employees is $1,404,600, which is less than

18    the penalty cap of $4,000 per employee (550 employees x $4,000 per employee =

19    $2,200,000).

20        47.    Temporary employees are also paid on a weekly basis. (Burket Decl. ⁋

21    4.) Approximately 110 temporary employees in the putative Sub-Class worked a total

22    of 268 weeks. (*Id.*) Thus, for these employees, the penalties for an alleged initial

23    inaccurate wage statement (110 weeks x $50 per week) would be $5,500, and the

24    penalties for each subsequent inaccurate wage statement ((268 weeks – 110 weeks) x

25    $100 per week) would be $15,800. Thus, the total penalty in controversy for

26    temporary employees is $21,300, which is less than the penalty cap of $4,000 per

27    employee.

28

SF-4919341

48.     There are approximately 34 hourly, non-exempt employees in the putative Sub-Class, who have been paid on a bi-weekly basis. (Burket Decl. ¶ 5.) These employees in the putative Sub-Class worked a total of 811 weeks, or 405 pay periods. (*Id*.) Thus, for these employees, the penalties for an alleged initial inaccurate wage statement (34 pay periods x $50 per week) would be $1,700, and the penalties for each subsequent inaccurate wage statement ((405 pay periods – 34 pay periods) x $100 per pay period) would be $37,100. Thus, the total penalty in controversy for these employees is $38,800, which is less than the penalty cap of $4,000 per employee.

49.     In sum, the total estimated amount in controversy for Plaintiff's wage statement claims is at least $1,464,700 (*i.e.*, $1,404,600 + $21,300 + $38,800).

<u>Plaintiff's Waiting Time Claim</u>

50.     Plaintiff asserts a waiting time claim, alleging that members of the Waiting Time Penalties Sub-Class were not paid all wages earned at the end of their employment. (Compl. p. 3, ¶ 9; p. 15, ¶¶ 74-84.) Plaintiff alleges these violations were willful. (*Id*., p. 16, ¶ 82.)

51.     Waiting time penalties under California Labor Code § 203(a) are calculated at an employee's final daily rate of pay (*i.e.*, the employee's final wage rate times the employee's average shift length) times the number of days of waiting timepenalties, up to a maximum of 30 days. *See Mamika v. Barca*, 68 Cal. App. 4th 487, 491-93 (Cal. App. 1998).

52.     Because – as noted above – Plaintiff alleges that each putative Sub-Class member was underpaid each shift, Plaintiff necessarily alleges that none of the putative Sub-Class members have been paid all wages owed upon separation of their employment. Thus, each putative Sub-Class member that was separated from his or her employment would be entitled to waiting time penalties equal to 30 days' of wages. *See* Cal. Labor Code § 203(a); *Giannini v. Nw. Mut. Life Ins. Co*., No. C 12–77 CW, 2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012) ("Defendants can properly

SF-4919341

assume that all members of the former employee subclass were entitled to the maximum waiting time penalties under Labor Code section 203.").

53.    Defendants estimate that 348 regular hourly employees in the putative Sub-Class were terminated during the Relevant Time Period. (Burket Decl. ⁋ 3.) These employees earned an average wage of $19.57 per hour and worked an average shift length of 8.94 hours. (*Id*.) The estimated amount in controversy for these hourly employees is, therefore, $1,922,515.[13]

54.    Defendants estimate that 213 regular hourly employees in the putative Sub-Class were terminated during the Relevant Time Period. (Burket Decl. ⁋ 4.) These employees earned an average wage of $17.42 per hour and worked an average shift length of 9.0 hours. (*Id*.) The estimated amount in controversy for these hourly employees is, therefore, $1,057,481.[14]

55.    Defendants estimate that 16 other hourly, non-exempt employees in the putative Sub-Class were terminated during the Relevant Time Period. (Burket Decl. ⁋ 5.) These employees earned an average wage of $22.31 per hour and worked an average shift length of 8.76 hours. (*Id*.) The estimated amount in controversy for these hourly employees is, therefore, $97,876.[15]

56.    In sum, the total estimated amount in controversy for Plaintiff's waiting time penalty claims is at least $3,077,872 (*i.e*., $1,922,515 + $1,057,481 + $97,876).

<u>Plaintiff's Attorneys' Fees</u>

57.    Plaintiff asserts that he and the putative class members are entitled to recover attorneys' fees. (Compl. p. 19.)

---

[13] ((348 employees x $19.57/hour x 8 hours) + (348 employees x $29.35/hr x 0.94 hours) x 30 days) = $1,922,515.

[14] ((213 employees x $17.42/hour x 8 hours) + (213 employees x $26.13/hr x 1.00 hours) x 30 days) = $1,057,481.

[15] ((16 employees x $22.31/hour x 8 hours) + (16 employees x $33.46/hr x 0.76 hours) x 30 days) = $97,876.

NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

SF-4919341

58.    "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Further, the amount in controversy may include the attorneys' fees incurred through resolution of the case, not just fees incurred at the time of removal. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018).

59.    In this case, Plaintiff's Complaint alleges that attorneys' fees are recoverable for nearly all of the Complaint's claims. (Compl. p. 10, ℙ 36; p. 11 ℙ 46; p. 13, ℙ 65; p. 15, ℙ 73; p. 16, ℙ 84; p. 19, ℙ 102.)

60.    Courts in this Circuit have established 25% of the common fund as a benchmark award for attorneys' fees. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Courts, however, may vary from this benchmark. *See, e.g., In Re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (awarding attorneys' fees equal to 30% of common fund and compiling cases where fee awards ranged between 25% and more than 40%).

61.    Indeed, in similar wage and hour class action cases, Plaintiff's counsel commonly argues for and seeks attorneys' fees equal to 33% of the amounts recovered. *See, e.g.*, Plaintiff's Notice of Motion and Motion for an Award of Attorneys' Fees to Class Counsel and Enhancement to Plaintiffs, *Raquedan v. Centerplate of Delaware, Inc.*, Case No. 5:17-CV-03828-LHK (N.D. Cal. Sept. 23, 2019), attached hereto as **Exhibit D**, at 1 (requesting attorney fee award equal to one-third of settlement amount). *See also id*. at 12 (asserting that "[a]ttorneys' fees that are fifty percent of the fund are typically considered the upper limit, with ***thirty to forty percent commonly awarded in cases where the settlement is relatively small***") (emphasis in original); *id*. (arguing that proposed fee award of 33% was "consistent with average fee award in class actions," that the "custom and practice in class actions is to award approximately one-third of the fund as a fee award," and that Plaintiff's

counsel "has been issued one-third of the settlement amount in fees in a number cases in the Northern District") (citing cases).

62.    It is plausible to assume that – as in similar cases litigated by Plaintiff's counsel – Plaintiff will seek an attorneys' fee award that is at least 33% of the amount recovered by Plaintiff and the putative class members. In other words, Plaintiff's demand for attorneys' fees places at least another $2,724,071 in controversy (*i.e.*, 33% of the amounts in controversy identified above).

**The Total Amount in Controversy Exceeds $5,000,000**

63.    Without admitting that Defendants engaged in any improper conduct, that Plaintiff's claims have any merit, that this action is maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure, or that Plaintiff or any member of the classes or subclasses he purports to represent is entitled to recover any relief from Defendants, as requested in the Complaint or otherwise, for all the reasons set forth above, the estimated total amount in controversy is at least $10,896,284, as summarized below:

| Claim | Amount in Controversy |
|---|---|
| Meal Break Claims | $1,720,731 |
| Rest Break Claims | $1,720,731 |
| Unpaid Straight-time Wage Claims | $53,784 |
| Unpaid Overtime Wage Claims | $134,395 |
| Wage Statement Claims | $1,464,700 |
| Waiting Time Claims | $3,077,872 |
| Attorneys' Fees | $2,724,071 |
| | **Total: $10,896,284** |

64.    Notably, the estimated damages and penalties set forth above estimate the putative class members' potential recovery only from June 26, 2020 up to the present time, not through trial. It is reasonable to assume that a trial in this case could

18

1   not be completed in less than two years and, thus, it is reasonable assume that the

2   potential damages and penalties in controversy will roughly double between now and

3   the conclusion of trial, further increasing the amount in controversy.

4        65.    Because the amount in controversy requirement for CAFA jurisdiction

5   has been met, along with all other requirements for CAFA jurisdiction, this action is

6   properly removable to this Court.

7   **THIS COURT ALSO HAS TRADITIONAL DIVERSITY JURISDICTION**

8        66.    This Court also has traditional diversity jurisdiction over this matter

9   pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff's individual claims constitute a

10  civil action between citizens of different States (*i.e.*, complete diversity exists) and

11  the amount in controversy relating to Plaintiff's claims exceeds the sum or value of

12  $75,000. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005)

13  (holding that court has jurisdiction over class action where it has original jurisdiction

14  over at least one class member's claim; it may exercise supplemental jurisdiction over

15  all other class members' claims that are part of the same case or controversy,

16  notwithstanding whether such claims satisfy the amount in controversy requirement,

17  and whether CAFA jurisdiction also exists is irrelevant).

18       67.    Here, in addition to having jurisdiction under CAFA, this Court has

19  traditional diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

20  <u>**Complete Diversity Exists**</u>

21       68.    As noted above, Plaintiff is (and at the time the State Court Action was

22  filed) a citizen of California, and Defendants are (and at the time of the State Court

23  Action was filed) citizens of Delaware and Colorado. (*See* ¶¶ 16-20 and n.1, *supra*.

24       69.    Although Plaintiff's Complaint also names "Does 1 through 50" as

25  defendants, the citizenship of defendants sued under fictitious names is disregarded

26  for the purposes of determining diversity jurisdiction. *See* 28 U.S.C. § 1441(b).

27       70.    Therefore, because Plaintiff is a citizen of California and Defendants are

28  citizens of Delaware and Colorado, complete diversity existed and continues to exist

19
NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

between Plaintiff and Defendants, both at the time the State Court Action was filed and at the time of removal to this Court.

**The Amount in Controversy Exceeds $75,000**

71.     Without making an admission of liability or damages with respect to any aspect of this case, Defendants have a good faith belief that – if this case were to proceed as a single plaintiff case, either because no class certification motion is filed or because class certification is denied – the amount placed in controversy by Plaintiff's individual claims exceeds the jurisdictional minimum of $75,000.

72.     From June 26, 2020 until the termination of his employment on April 16, 2021 – a period of 42 workweeks – Plaintiff worked a total of 119 shifts, with 82 of those shifts lasting more than 8 hours, at an average wage rate of $16.88 per hour. (Burket Decl. ¶ 6.)

73.     Using the same calculations and reasonable assumptions set forth above with respect to this Court's jurisdiction under CAFA, Defendants estimate that Plaintiff's individual claims place at least the following amounts in controversy:

        a.  Meal Break Claim – $1,205 (119 weeks x assumed violations during 3 out of 5 shifts per week x $16.88/hr.).

        b.  Rest Break Claim – $1,205 (119 weeks x assumed violations during 3 out of 5 shifts per week x $16.88/hr.).

        c.  Unpaid Straight-time Claim – $31 (37 straight-time shifts x 3 minutes per shift x $16.88/hr.).

        d.  Unpaid Overtime Claim – $104 (82 overtime shifts x 3 minutes per shift x $25.32/hr.).

        e.  Wage Statement Claim – $2,050 (42 workweeks paid bi-weekly = 21 pay periods; (1 pay period x $50) + (20 pay periods x $100) = $2,050).

        f.  Waiting Time Claim – $4,200.[16]

---

[16] Plaintiff's final rate of pay was $17.50/hour. (Burket Decl. ¶ 6.) Assuming conservatively that Plaintiff worked an average of 8 hours per day, Plaintiff's waiting

NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

74.    Thus, Plaintiff's total claims for damages and penalties place at least $8,795 in controversy.

75.    Plaintiff, therefore, would only need to incur $66,205 in attorneys' fees litigating his individual claims through the end of trial in order for the jurisdictional threshold of $75,000 to be met. *See, e.g.*, *Brady v. Mercedes-Benz USA, Inc*., 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("[A] reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.").

76.    Defendants are informed and believe that the rates of Plaintiff's counsel range from $325 per hour to $900 per hour, which federal courts in California have held to be reasonable. (*See* **Exhibit E** at 6.) Assuming an average rate of $613 per hour for Plaintiff's counsel, such counsel need only spend 109 hours of time attributable to litigating Plaintiff's individual claims, through trial, in order for the jurisdictional threshold to be met. For example, and without waiving or limiting any other argument that Defendants could make regarding the amount in controversy, if Plaintiff's motion for class certification (which Defendants will vigorously oppose) is denied, Plaintiff's counsel would likely spend at least 109 hours litigating Plaintiff's claims through trial after denial of class certification. Thus, with attorney's fees likely to be incurred by Plaintiff through trial, the amount in controversy for Plaintiff's individual claims easily exceeds $75,000.

77.    Accordingly, for the reasons stated above, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, so this action is removable pursuant to 28 U.S.C. § 1441(b).

78.    By filing this Notice of Removal, Defendants do not waive and expressly reserve all rights, objections, and defenses in this case, including defenses based on lack of personal jurisdiction.

---

time claim results in the following amount in controversy: $17.50/hour x 8 hours/day x 30 days = $4,200.

NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

SF-4919341

1    Dated:  August 31, 2022                MORRISON & FOERSTER LLP

2

3                                           By:    _/s/ Tritia M. Murata_

4                                                  Tritia M. Murata

5

6                                           Attorneys for Defendants
                                            SWIFT BEEF COMPANY and JBS USA
7                                           FOOD COMPANY HOLDINGS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

SF-4919341